DECISION
This matter is before the Court on motion for summary judgment filed by Defendants Thomas J. Hazard ("Hazard"), Frank C. Messina ("Messina"), and B M Associates ("B M") pursuant to Rule 56. The suit was initiated by Kimberly A. Heeks ("Heeks" or "plaintiff's mother") on behalf of Joseph A. Heeks ("Joseph" or "plaintiff"), her son, a minor child. The movants request summary judgment in their favor as to the claims made by plaintiff and cross-claims made by defendants Richard Sacchetti and Patricia Sacchetti (collectively, "the Sacchettis").
This motion requires the Court to determine whether there exists a genuine issue of material fact as to Hazard, Messina, and B M's liability. These defendants claim that they cannot, as a matter of law, be found liable for Joseph's lead poisoning because they did not owe a duty to Joseph and, if they did, they satisfied all statutorily required abatement measures. The Sacchettis object and request, in the alternative, a continuance pursuant to Rule 56(f). *Page 2 
 Facts and Travel
This matter arises out of two-year-old Joseph's diagnosis of lead poisoning in the summer of 1994. The Sacchettis owned an apartment at 72 Power Street, in Pawtucket, Rhode Island, where plaintiff was a tenant from the time of his birth until early May 1994. Plaintiff claims that this apartment contained unsafe levels of lead-based paint which resulted in his poisoning. (Am. Compl. ¶ 17, 24.)
The Sacchettis filed a third-party complaint against Hazard, Messina, and B M, seeking indemnification or contribution for any judgment imposed against the Sacchettis. (Third-Party Compl. ¶ 5.) Thereafter, the plaintiff filed an amended complaint alleging that Hazard, Messina, and B M negligently misrepresented or omitted information from the plaintiff regarding an apartment owned by B M, located at 1800 New London Turnpike, in West Warwick, Rhode Island ("B M apartment"). (Am. Compl. ¶ 34-39.) The plaintiff also alleges that Hazard, Messina, and B M were negligent in letting the plaintiff occupy an apartment that contained dangerous levels of lead-based paint, failing to inspect the apartment "to insure [sic] that it was free from defect and was safe for human habitation," and failing to inform the plaintiff of the presence of lead-based paint. (Am. Compl. 28-31.) The plaintiff further alleges that Hazard, Messina, and B M violated the Rhode Island Housing Maintenance and Occupancy Code's, G.L. 1956 § 45-24.3-1(3), prohibition on "[l]ead-based substances . . . whenever circumstances present a clear and significant health risk to the occupants of the property. (Am. Compl. ¶ 28.) Lastly, the plaintiff alleges that Messina, Hazard, and B M violated the Rhode Island Residential Landlord and Tenant Act's, G.L. 1956 § 34-18-1, requirement that an owner maintain rental housing in compliance with the health and safety code and inform the *Page 3 
plaintiff of any violations of the health and safety code by failing to inform the plaintiff of the presence of lead-based paint. (Am. Compl. ¶ 29.) The plaintiff alleges that these acts or omissions resulted in Joseph suffering lead poisoning and elevated lead levels while residing in the B M apartment. (Am. Compl. ¶ 10.) The plaintiff was a tenant at the B M apartment for some period of time in 1994 after he lived at the apartment owned by the Sacchettis. Defendants Hazard and Messina are general partners of B M.
On or about May 3, 1994, while plaintiff resided in an apartment owned by the Sacchettis, Joseph was admitted to Rhode Island Hospital in Providence, Rhode Island, where he was diagnosed as having an elevated level of lead in his body. RIDOH PBb Electronic Data Transfer Batch Processing, Joseph Heeks [hereinafter Medical Report]. Plaintiff did not return to the Sacchetti apartment after his release from the hospital, but instead went with his mother to live with her father at 5 Gerald Street in Warwick, Rhode Island. (Heeks Dep. 44:13-23, Aug. 27, 2004.) Heeks and Joseph resided with Heeks' father for a matter of weeks.
Toward the end of May 1994 or the beginning of June 1994, plaintiff moved to the B M apartment in West Warwick, Rhode Island, where they resided until some time in June. Heeks continued taking plaintiff Joseph and her other children to her ex-husband's apartment while she worked. (Heeks Dep. 50:10-18, Aug. 27, 2004.) This continued until July 1994 when Heeks's ex-husband moved to Pawtucket, Rhode Island.
Given Joseph's initial diagnosis of lead poisoning, on May 3, 1994, officials from the Rhode Island Department of Health (DOH) conducted lead inspections prior to plaintiff's moving into the B M apartment. The DOH inspection report summary indicates that an inspection of the B M apartment was conducted on June 2, 1994, with *Page 4 
the results being reported to B M on June 30, 1994. The report itself indicates that lead hazards existed in three areas: the window casing/sill in the apartment's master bedroom; the porch siding and exterior siding at the front of the unit; and the foundation in the rear of the unit. See Rhode Island Department of Health, Comprehensive Environmental Lead Inspection Report Form 8, 9, 12 [hereinafter Inspection Report].
After his initial diagnosis on or about May 3, 1994, Joseph's lead level was regularly monitored by physicians. Medical Report. On or about June 1, 1994, Joseph was found to have a lead level of 48. RIGHA Progress Report 1. On or about July 14, 1994, he registered a lead level of 41. Id.
 Parties' Arguments
The moving parties — Hazard, Messina, and B M — contend, first, that B M owed no duty to Joseph, and, second, that even if B M did owe a duty to Joseph and that duty was breached, it caused no injury or damages to Joseph.
In support of their first contention, the movants claim that they were not negligent toward Joseph because "[t]he law required that prior to occupancy the apartment be inspected, that prospective tenants be notified of the inspection results . . . and, where required, any hazard be mitigated or abated. . . ." (Def.'s Mem. Supp. Summ. J. 4-5.) The movants argue that the apartment was inspected by the DOH prior to being occupied by plaintiff, that Heeks was notified of the inspection results, and that the hazards identified by the inspector were corrected. (Id. 5.)
In support of their second contention, the movants refer to the timing of Joseph's diagnosis and his occupancy of the B M apartment. The movants allege that Joseph *Page 5 
was diagnosed with lead poisoning prior to moving into their apartment. (Id. 6-8.) Moreover, they refer to the transcript of Heeks' deposition and the expected testimony of plaintiff's experts to claim that "the record is devoid of any facts indicating that the minor plaintiff, during the approximately one month period he resided at 1800 New London Turnpike, experienced an exposure to lead based [sic] paint which caused or contributed to his injuries." (Id. 8.)
The Sacchettis oppose the motion on three grounds. First, they claim that the plaintiff resided at the B M apartment in May 1994, the same month in which Joseph was initially diagnosed and prior to the medical examinations that showed lead levels of 48 and 41. (Def.'s Mem. Supp. Objection Summ. J. 2.) Second, they argue that Joseph showed signs of "increased lead" while residing at the B M apartment. (Id. 2-3.) Third, they argue that B M did not properly abate the lead hazard while Joseph resided at the B M apartment. (Id. 3.) In the alternative, the Sacchettis request a continuance under Rule 56(f), claiming that they have not had sufficient opportunity to conduct discovery. (Id. 4.)
 Standard of Review
Rule 56 of the Rhode Island Superior Court Rules of Civil Procedure states that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." Super. R. Crim. P. 56(c); see Cain v.Johnson, 755 A.2d 156, 164 (R.I. 2000). "[A] `material' fact is one that may affect the outcome of the case. . . ." P.R. Aqueduct Sewer Auth.v. EPA, 35 F.3d 600, 605 (1st *Page 6 
Cir. 1994). In conducting this review, the court must draw all reasonable inferences in favor of the party opposing the motion.Stebbins v. Wells, 766 A.2d 369, 372 (R.I. 2001).
 Existence of Material Facts
There are two key factual issues relevant to determining whether the movants are entitled to summary judgment in their favor. The first issue concerns the presence of unsafe levels of lead during the period in question and the second concerns the period of time the plaintiff resided in the B M apartment.
The Rhode Island Housing Maintenance and Occupancy Code prohibits an owner of a dwelling from "let[ting] to another for occupancy, any dwelling or dwelling unit, for the purpose of living" if the dwelling contains "[l]ead-based substances . . . [that] present a clear and significant health risk to the occupants of the property. . . ." G.L. 1956 § 45-24.3-10. The statute also requires mitigation of lead hazards material if there is a tenancy by an at-risk occupant. Id. It is a question of material fact whether the B M apartment lawfully occupied by the plaintiff was contaminated by lead-based paint. If so, it is then a question of material fact whether B M appropriately mitigated the health risk.
The plaintiff argues that there were several incidences of lead poisoning, all of which are actionable. The plaintiff argues that some of these poisonings were due to the negligence of the Sacchettis, and others, the negligence of Hazard, Messina, and B M. *Page 7 
 Lead Level
The Sacchettis claim that there were unsafe levels of lead present in the B M apartment while Joseph lived there. (Third-Party Compl. ¶ 4.) The Sacchettis allege that the B M apartment's lead contamination was not properly mitigated. For their part, the plaintiff's negligence claims are also dependent on the presence of unsafe levels of lead at the B M apartment while Joseph lived there.
In an inspection performed on June 2, 1994, the DOH identified lead hazards in three locations in or around the B M apartment.See Inspection Report 8, 9, 12. Though Messina stated that corrective measures were taken in July 1994, the report indicates that these hazards were not abated until September 16, 1994. Id. Moreover, Messina, Hazard, and B M claim that lead hazards were found and abated at only one location in or near the apartment — namely, the window sill in the master bedroom. (Def.'s Mem. Supp. Summ. J. 5.) As the DOH inspection report indicates, and the Sacchettis point out in their memorandum, that is simply not true. As such, whether the lead hazards identified by the DOH were properly abated is a material issue that clearly remains in dispute.
The movants claim that Joseph was diagnosed with lead poisoning prior to living at their apartment, therefore immunizing them from all liability. However, the Sacchettis claim that Joseph continued to suffer elevated lead levels during and after his residency in the movants' apartment. There exist material issues of fact on this issue. *Page 8 
 Conclusion
Considering the evidence in the light most favorable to the non-moving party, the Court finds that there exist genuine issues of material facts. The motion for summary judgment submitted by defendants Hazard, Messina, and B M is denied. Counsel shall prepare an order consistent with this Decision. *Page 1